IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAWRENCE MOSLEY, #307-049      \*
       Plaintiff,

    v.                  \*   CIVIL ACTION NO. WDQ-14-834

MENTAL HEALTH DEPARTMENT   \*
      Defendant

MEMORANDUM

On February 18, 2014, Lawrence Mosley, a state prisoner confined at North Branch Correctional Institution ("NBCI"), initiated a civil rights action against prison psychology staff, complaining of inadequate mental health treatment and seeking injunctive relief requiring staff to provide him the "right treatment." Mosley indicated he was angry and possibly homicidal, and stated he wanted a transfer to another prison. That action, *Mosley v. Psychology Department,* Civil Action No. WDQ-14-480 (D. Md.) required response from the Maryland Attorney General. ECF 2 and 4. On April 30, 2014, the undersigned examined records detailing the mental health care Mosley had been provided, denied injunctive relief, and closed the case. *Id.,* ECF 8 and 9.

While Civil Action No. WDQ-14-480 ("*Mosley I*") was pending, Mosley filed the instant action, seeking mental health treatment and indicating he is depressed, suffers extreme mood swings, and is "losing control" to "the point of hurting someone." ("*Mosley II*"). ECF 1. Again, counsel has provided a court-ordered response that has been construed as a dispositive motion. Mosley was permitted an opportunity to respond,[1] but has failed to do so. No hearing is needed to resolve the issue raised in this case. *See* Local Rule 105.6. (D. Md. 2014).

---

[1] The record shows that Mosley was served with notice of the response pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Notice was mailed on April 29, 2014. ECF 5. As of the within signature date, no opposition response has been filed.

BACKGROUND

The facts at issue here were fully detailed in *Mosley I*.[2]  On December 17, 2013, Mosley reported that his girlfriend had been killed and requested to speak with psychology staff.  ECF 4-1, Declaration of Laura M. Booth, Licensed Professional Clinical Counselor, at ¶4; ECF 4-2, Declaration of Randy Durst, Case Management Manager, with attachment, p. 17. His self-referral was forwarded to social work for follow-up according to standard procedure. *Id.*

On January 8, 2014, Mosley wrote to Amanda L. Tart, LCPC, advising her that he did not want to receive any correspondence from her. ECF 4-1, at ¶4; ECF 4-2, p. 16. He further stated, "So Ms. Tart, you can go play kid games with someone else! Thank you for your time and have a nice day." *Id.*  Tart made note in his file that "no further follow-up [be] scheduled at this time." *Id.*

At the request of the Warden, on February 21, 2014, Mosley was evaluated by Laura M. Booth, a licensed professional clinical counselor.  ECF 4-1, at ¶ 6; ECF 4-2, pp. 8-9. During the evaluation, Mosley denied feeling homicidal or suicidal. *Id.* When Booth confronted him with a letter to the court, dated February 10, 2014, Mosley stated that he did not want to be placed on suicide precautions. *Id.* In her evaluation note, Booth wrote that Mosley had a bitter attitude towards treatment staff and focused more of his frustration on his housing assignment than the death of his girlfriend, Latavia Womack. *Id.* at ¶6; ECF 4-2, p. 8.  She concluded that he had no homicidal or suicidal ideation. *Id.* At the conclusion of the session, Mosley was informed that: (1) social work would be consulted to provide a call home about the death of his girlfriend if an

---

[2] Counsel indicates there are no additional psychological records for Mosley between the period of March 11, 2014 to March 24, 2014, and therefore relies on the records presented in *Mosley I.*

obituary could be found and (2) his classification would be reviewed for appropriate housing. *Id.*

Upon checking death notices, no obituary for Ms. Womack could be located; therefore, Mosley

was not permitted to call home. ECF 4-1, at ¶6.

On March 11, 2014, Deirdre Mull, CRNP, saw Mosley for medication management. *Id.*

at ¶8; ECF 4-2, pp. 2-7. In the mental status section of the report, she noted that Mosley did not

express suicidal or homicidal ideation and was not exhibiting signs, psychosis, or mania. *Id.*;

ECF 4-2, p. 5. She also reported that Mosley complained that he was feeling very irritable and

frustrated, was unhappy because he is innocent and should not be in prison, and was sleeping

poorly. *Id.* Mull's assessment concluded that she "suspected that much of pt's 'mood' issues

may be due to Axis II traits rather than anxiety or depression, however, medication may help

with his irritability and behavior. Discussed med options, will begin[sic] lithium 300 mg for

irritability/mood lability; r/b/se discussed with pt and he gave informed consent." *Id.*

Booth avers that a review of his mental health record reflects that mental health providers

are regularly monitoring him. ECF 4-1, at ¶9. Mosley has not filed any administrative remedy

procedure ("ARP") requests concerning his mental health care at NBCI. ECF 4-3, Lawrence

Mosley, # 307-049, ARP Index.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986) the Supreme Court explained that in considering a motion for summary

judgment, the "judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation

omitted).  Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

Mosley seeks injunctive relief, asking for additional mental health treatment.  An injunction is a drastic remedy which should not be granted as a matter of course.  *See Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2761 (2010).  The party seeking the injunction must demonstrate: (1) by a "clear showing" that, he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F. 3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, __U.S. __, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).  All four requirements must be satisfied.  *Id.*  Indeed, the Court in *Winter* rejected a standard that allowed the [movant] to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may ... be awarded [only] upon a clear showing that the [movant] is entitled to such relief." *See Winter*, 555 F.3d at 22.

## ANALYSIS

As an inmate sentenced to confinement, Mosley is entitled to receive reasonable treatment for his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth

Amendment." *Id.* at 104. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995). An inmate also has an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *See Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). An inmate is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48. As previously noted, even if the prisoner shows that he was denied psychological or psychiatric treatment, he must also demonstrate that the failure or refusal to provide treatment constituted deliberate indifference on behalf of personnel.

Mosley has been called upon to rebut the declarations and materials with his own verified documents to establish a genuine dispute of material fact with regard to his mental health claims. He has failed to so do. The documentation provided to the court shows that he has been placed on medication to treat his mental health symptoms and was seen by NBCI mental health staff. Staff has not consciously ignored his complaints.

6

## CONCLUSION

For the aforementioned reasons, the court-construed motion for summary judgment will be granted.   The complaint for injunctive relief will be dismissed.

_10/8/14_
Date

_____
William D. Quarles, Jr.
United States District Judge

7